IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA (Pensacola)

| | |
|---|---|
| **RUSSELL K. SHARBAUGH,** | : No. 3:16-CV-126 |
| Plaintiff, | : |
| | : Chief Judge M. Casey Rodgers |
| v. | : Magistrate Judge Elizabeth M. Timothy |
| | : |
| **JOHN C. BEAUDRY, et al.,** | : CIVIL ACTION – LAW |
| Defendants. | : JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT BEASLEY'S MOTION TO DISMISS**

**AND NOW** comes the Plaintiff, Russell K. Sharbaugh, as the Personal Representative of the Estate of Ricky Dean Martin, by and through his undersigned counsel, to file this Memorandum in Opposition to Defendant Beasley's Motion to Dismiss.

### RELEVANT PROCEDURAL HISTORY

On August 11, 2016, Plaintiff filed an Amended Complaint (Doc. 43). On August 29, 2016, Defendant Beasley filed a motion to dismiss (Doc. 55). This brief is filed in opposition to Defendant Beasley's motion to dismiss.

### STATEMENT OF FACTS

For a complete recitation of the relevant facts, Plaintiff respectfully refers the Court to the Amended Complaint (Doc. 1).

1

## QUESTION PRESENTED

Should Count II[1] against Defendant Beasley be dismissed based upon a grant of immunity or for the failure to state a claim upon which relief can be granted, when the law is clearly established, and the Amended Complaint establishes a causal connection between Defendant Beasley's actions/inactions and the harm that occurred?

## ARGUMENT

Defendant Beasley's request for immunity should be denied. Moreover, the Amended Complaint states a claim against him upon which relief may be granted.

Qualified immunity protects government officers performing discretionary functions from suit so long as their conduct does not violate a Plaintiff's clearly established constitutional rights. Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Three sources of law put a government official "on notice of... constitutional rights: specific... constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in

---

[1] Defendant Beasley correctly notes that despite the typo in the header, Count II is asserted against him (and others).

the relevant jurisdiction." Goebert v. Lee Cnty., 510 F.3d 1312, 1330 (11th Cir. 2007) (citing Vinyard v. Wilson, 311 F.3d 1340, 1351-52 (11th Cir. 2002)).

In this case, the law has long been clearly established. The Eighth Amendment to the Federal Constitution specifically provides inmates with a right not to be subjected to "cruel and unusual punishment." Moreover, in 1994, in Farmer v. Brennan, 511 U.S. 825 (1994), the U.S. Supreme Court recognized the right of an inmate to be free from violence at the hands of other inmates.

Furthermore, in 2006, the 11th Circuit held that a supervisor may be held liable under Section 1983 when he participates in the alleged constitutional violation *or when there is a causal connection between his actions and the violation*. See Valdes v. Crosby, 450 F.3d 1231, 1236 (11th Cir. 2006). The Court explained that a causal connection supporting supervisory liability under Section 1983 exists "when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Id. at 1237 (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)).

Thus, the only question that remains is a factual question: Would it be clear to an Inspector General of the Department of Corrections that s/he is violating clearly

established law, i.e., violating an inmate's right to be free from violence at the hands of other inmates, when the following facts apply:

1. In 2012, pursuant to Florida Title IV, Section 20.055 (2012), as Inspector General, Defendant Beasley was required to:

    a. Initiate, conduct, supervise, and coordinate investigations designed to detect, deter, prevent, and eradicate fraud, waste, mismanagement, misconduct, and other abuses in state government. See Section 20.055(6).

    b. Conduct investigations and other inquiries free of actual or perceived impairment to the independence of the inspector general or the inspector general's office. See Section 20.055(6)(d).

    c. Report expeditiously to the Department of Law Enforcement or other law enforcement agencies, as appropriate, whenever the inspector general has reasonable grounds to believe there has been a violation of criminal law. See Section 20.055(6)(c).

    d. Keep the Secretary of Corrections informed concerning fraud, abuses, and deficiencies relating to programs and operations administered by the Department of Corrections, and recommend corrective action concerning fraud, abuses, and deficiencies. See Section 20.055(2)(f).

    e. Submit timely reports on investigations conducted by the inspector general to the Secretary of Corrections. See Section 20.055(6)(f).

    f. Prepare an annual report summarizing the activities of the office during the immediately preceding year that includes a summary of each investigation completed, and a description of significant abuses and deficiencies disclosed by investigations. See Section 20.055(7)(c)(2)&(5).

2. Moreover, the Secretary of Corrections appoints and oversees a Security Review Committee that is responsible, in part, for adopting and enforcing minimum security standards and policies. See Title XLVII, Chapter 944.151 (2012).

3. The Inspector General is a member of the Security Review Committee. Id. at Chapter 944.151(1).

4. As the Inspector General, Defendant Beasley is the policymaker for the Office of Inspector General, who has final decision-making authority within the Office regarding how criminal and internal affairs investigations are conducted, and participates in the overall policymaking of the Department of Corrections. See Amended Complaint at ¶ 22.

5. Defendant Beasley is personally responsible for rooting out department corruption. See Amended Complaint at ¶ 23.

6. Despite this responsibility, Defendant Beasley failed to investigate allegations of officers' wrongdoing and directed investigators under his supervision to back off criminal probes of wrongdoing within the Department. See Amended Complaint at ¶ 24.

7. When confronted by investigators about evidence that corrections officers had lied and filed false reports, and that some inspectors had sabotaged a 2010 Florida Department of Law Enforcement death investigation, Beasley complained that inspectors spent too much time with FDLE who turned every investigation into a "longevity project." See Amended Complaint at ¶ 25.

8. When investigators filed a lawsuit and testified under oath before the Senate Criminal Justice Committee about Defendant Beasley's conduct, it is

believed that discovery will reveal that Defendant Beasley (and others) participated in retaliating against the investigators by causing them to be subjected to false internal investigations and transferred out of the IG's office. See Amended Complaint at ¶ 26.

9. Regarding the instant investigation, on April 4, 2012, the Office of Inspector General received notice of the incident. See Amended Complaint at ¶ 175.

10. An inmate housed in D1-116 (directly next to cell D1-117) testified in a sworn statement that he heard Martin ask Defendant Beaudry, just hours prior to being assaulted, to move him away from Rogers. See Amended Complaint at ¶ 176.

11. The inmate testified that Defendant Beaudry told Martin, "Fight or fuck." See Amended Complaint at ¶ 177.

12. Other inmates reported to investigators that they understood "fight or fuck" to be established prison policy at Santa Rosa Correctional Institute. See Amended Complaint at ¶ 178.

13. Defendant Beaudry did not move Martin away from Rogers. See Amended Complaint at ¶ 179.

14. The inmate's interview discussing the "fight or fuck" policy was conspicuously omitted from the final inspector general's report posted on the Department's website. See Amended Complaint at ¶ 180.

15. It has been reported that the Department interviewed 12 corrections officers and over 75 inmates. See Amended Complaint at ¶ 181.

16. While dozens of inmates provided hours of interviews under oath, only one corrections officer, Defendant Beaudry, provided a sworn interview, which lasted only nine minutes. See Amended Complaint at ¶ 182.

17. While 10 other officers provided written affidavits to affirm the correctness of their written reports, it does not appear that they were ever formally interviewed. See Amended Complaint at ¶ 183.

18. On September 6, 2012, the investigation was "Closed by Indictment," upon the indictment of Rogers for Premeditated Murder and other crimes. See Amended Complaint at ¶ 184.

19. McKinley Lewis, a spokesman for the Department of Corrections, stated that "neither the [Florida Department of Law Enforcement] nor the DOC inspectors assigned identified any violation of Florida law or department procedures." See Amended Complaint at ¶ 185.

20. Despite Beasley's statutory responsibilities, however, the scope of the investigation was limited to whether or not crimes had been committed, not whether or not DOC policies had been violated (as evidenced by the investigation being closed upon the indictment of Rogers). See Amended Complaint at ¶ 186.

21. Defendant Beasley's (and others) conduct created an environment within the Florida Department of Corrections, generally, and within the Santa Rosa Correctional Institution, specifically, wherein corrections officers knew that they could engage in criminal conduct that violated prisoners' civil rights, with impunity. See Amended Complaint at ¶¶ 27-43.

22. Defendant Beasley's (and others) conduct in creating an environment where corrections officers felt safe from administrative or criminal accountability directly caused or permitted Defendants Beaudry and Denmon to engage in their conduct described herein. See Amended Complaint at ¶ 28.

23. During a hearing in 2015, Beasley defended not disciplining the officers who placed Rogers in the cell with Martin, stating, "there was no policy and procedure violation at the time." See Amended Complaint at ¶ 111.

The above facts are not mere "conclusions." Despite Defendant Besley's statutory duties, he did not investigate or report obvious violations of DOC policy, or commonsense. Corrections officers were permitted to engage in wrongdoing without consequence. If investigators attempted to expose wrongdoing, they suffered retaliation. Defendant Beasley's actions/inactions are causally related to the harm that ultimately occurred.

It is no secret from the numerous articles that have been published on the subject, and the examples identified in the Amended Complaint, that there is a

history of widespread abuse in the DOC sufficient to have placed Defendant Beasley on notice of same.  It is clear from Defendant Beasley's actions/inactions, with respect to both Mr. Martin's murder, and the other investigations discussed in the Amended Complaint, that Defendant Beasley had notice of the need to identify/report the wrongdoing, and to help to correct it, but that he failed to do so.  It is clear that this failure created an environment wherein supervisors and subordinates were deliberately indifferent to inmates' constitutional rights, and that Defendant Beasley (and others) knew that constitutional violations were occurring, and would continue to occur, but despite their statutory duty to and authorization to intervene, failed to do so.  See Valdes v. Crosby, 450 F.3d 1231, 1237 (11th Cir. 2006).

## CONCLUSION

Defendant Beasley has been placed on sufficient notice of the claims asserted against him. While Defendant Beasley may ultimately prevail in this litigation, Plaintiff should be at least permitted to conduct reasonable discovery and have the claims against Defendant Beasley be decided based upon a factually developed record.  Therefore, it is respectfully requested that the Court deny Defendant Beasley's motion to dismiss.

**Respectfully Submitted,**

_____          **Date: September 12, 2016**
**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA (Pensacola)

| | |
|---|---|
| **RUSSELL K. SHARBAUGH,** | : No. 3:16-CV-126 |
| **Plaintiff,** | : |
| | : Chief Judge M. Casey Rodgers |
| v. | : Magistrate Judge Elizabeth M. Timothy |
| | : |
| **JOHN C. BEAUDRY, et al.,** | : CIVIL ACTION – LAW |
| **Defendants.** | : JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s):

**JAMES A. TALBERT, ESQUIRE**
Email: atalbert@qpwblaw.com

**MICHELLE L. HENDRIX, ESQUIRE**
Email: mhendrix@florida-law.com

**ELIZABETH N. PALMER, ESQUIRE**
Email: npalmer@wpslawyers.com

**LAURA B. FARAGASSO, ESQUIRE**
Email: lbfaragasso@henryblaw.com

**WILLIAM B. CARTER, JR, ESQUIRE**
Email: ben@djmf-law.com

**WILLIAM P. MARTIN, ESQUIRE**
Email: peter@djmf-law.com

**ALBERT BOWDEN, ESQUIRE**
Email: al.bowden@myfloridalegal.com

_/s/ Devon M. Jacob_
**DEVON M. JACOB, ESQUIRE**

Date:  September 12, 2016