## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA (Pensacola)

| | |
|---|---|
| **RUSSELL K. SHARBAUGH,** | : **No. 3:16-CV-126** |
| **Plaintiff,** | : |
| | : **Chief Judge M. Casey Rodgers** |
| **v.** | : **Magistrate Judge Elizabeth M. Timothy** |
| | : |
| **JOHN C. BEAUDRY, et al.,** | : **CIVIL ACTION – LAW** |
| **Defendants.** | : **JURY TRIAL DEMANDED** |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT SCOTT'S MOTION TO DISMISS

**AND NOW** comes the Plaintiff, Russell K. Sharbaugh, as the Personal Representative of the Estate of Ricky Dean Martin, by and through his undersigned counsel, to file this Memorandum in Opposition to Defendant Scott's Motion to Dismiss.

## RELEVANT PROCEDURAL HISTORY

On August 11, 2016, Plaintiff filed an Amended Complaint (Doc. 43). On September 12, 2016, Defendant Scott filed a motion to dismiss (Doc. 59). This brief is filed in opposition to Defendant Scott's motion to dismiss.

## STATEMENT OF FACTS

For a complete recitation of the relevant facts, Plaintiff respectfully refers the Court to the Amended Complaint (Doc. 43).

1

## QUESTION PRESENTED

Should Count II against Defendant Scott be dismissed based upon a grant of immunity or for the failure to state a claim upon which relief can be granted, when the law is clearly established, and the Amended Complaint establishes a causal connection between Defendant Scott's actions/inactions and the harm that occurred?

## ARGUMENT

Defendant Scott's request for immunity should be denied.  Moreover, the Amended Complaint states a claim against him upon which relief may be granted.

Qualified immunity protects government officers performing discretionary functions from suit so long as their conduct does not violate a Plaintiff's clearly established constitutional rights. Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Three sources of law put a government official "on notice of... constitutional rights: specific... constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." Goebert v. Lee Cnty., 510 F.3d 1312, 1330 (11th Cir. 2007) (citing Vinyard v. Wilson, 311 F.3d 1340, 1351-52 (11th Cir. 2002)).

2

In this case, the law has long been clearly established. The Eighth Amendment to the Federal Constitution specifically provides inmates with a right not to be subjected to "cruel and unusual punishment." Moreover, in 1994, in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the U.S. Supreme Court recognized the right of an inmate to be free from violence at the hands of other inmates.

Furthermore, in 2006, the 11th Circuit held that a supervisor may be held liable under Section 1983 when he participates in the alleged constitutional violation *or when there is a causal connection between his actions and the violation*. <u>See</u> <u>Valdes v. Crosby</u>, 450 F.3d 1231, 1236 (11th Cir. 2006). The Court explained that a causal connection supporting supervisory liability under Section 1983 exists "when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." <u>Id.</u> at 1237 (quoting <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003)).

Thus, the only question that remains is a factual question: Would it be clear to governor that s/he is violating clearly established law, i.e., violating an inmate's right to be free from violence at the hands of other inmates, when the following facts apply:

3

The Florida Constitution defines the authority of the office of governor, in relevant part, as follows:

>     (a)   The supreme executive power shall be vested in a governor, who shall be commander-in-chief of all military forces of the state not in active service of the United States. The governor shall take care that the laws be faithfully executed, commission all officers of the state and counties, and transact all necessary business with the officers of government. The governor may require information in writing from all executive or administrative state, county or municipal officers upon any subject relating to the duties of their respective offices. The governor shall be the chief administrative officer of the state responsible for the planning and budgeting for the state.
>
>     (e)   The governor shall by message at least once in each regular session inform the legislature concerning the condition of the state, propose such reorganization of the executive department as will promote efficiency and economy, and recommend measures in the public interest.

FL Const. art. IV § 1.

During the relevant period of time, Defendant Scott was the Governor of Florida. *Amended Complaint at ¶ 16.* Defendant Scott participated in setting policy for the Florida Department of Corrections. *Id. at ¶ 17.* Under the supervision of Defendant Scott (and others), the Department of Corrections had a policy of not reporting inmate deaths to the Florida Department of Law Enforcement, or sabotaging the FDLE's investigations. *Id. at ¶ 18.*

Defendants Scott helped to create, and/or knowingly instituted or permitted policies, practices, and procedures that, according to the Bureau of Prisons, resulted, in 2012, in Florida having a higher prison death rate (325 per 100,000 inmates) than

any of the other 10 largest states. *Id.* at ¶ *19.* In an effort to keep campaign promises, Defendant Scott cut funding for the Department of Corrections; despite knowing that doing so was resulting in dangerous living conditions where the use of force by corrections officers was increasing, violations of civil rights were occurring, and inmates were dying. *Id.* at ¶ *20.*

In 2013, when an investigator began to expose widespread abuses committed by guards, Defendant Scott and the Department of Corrections placed the investigator on leave, and then transferred him to a new government job with a promise of a promotion. *Id.* at ¶ *21.* When investigators filed a lawsuit and testified under oath before the Senate Criminal Justice Committee about Defendant Beasley's conduct *(Id.* at ¶¶ *22-25),* it is believed that discovery will reveal that Defendant Scott participated in retaliating against the investigators by causing them to be subjected to false internal investigations and transferred out of the IG's office. *Id.* at ¶ *26.*

Defendants Scott's conduct created an environment within the Florida Department of Corrections, generally, and within the Santa Rosa Correctional Institution, specifically, wherein corrections officers knew that they could engage in criminal conduct that violated prisoners' civil rights, with impunity. *Id.* at ¶ *27-42.* Defendants Scott's conduct in creating an environment where corrections officers felt safe from administrative or criminal accountability directly caused or permitted

Defendants Beaudry and Denmon to engage in their conduct described herein. *Id. at ¶ 28.*

The DOC, under the ultimate supervision of Defendant Scott, continues to attempt to cover up information regarding inmate deaths, and continues to delay or prevent investigations into inmate deaths. *Id. at ¶ 43.* In this regard, in 2015, only two days after the Florida Legislature's Criminal Justice Committee grilled Defendant Beasley about inmate death investigations and reported DOC corruption, the DOC issued a new policy providing that all investigators working in the Inspector General's Office must sign a confidentiality agreement precluding them from speaking to anyone about any open or closed investigation. *Id. at ¶ 44.*

Defendant Scott did not merely disregard veiled threats or speculative harm. *Id. at ¶ 45.* Rather, Defendant Scott knew that the conduct that he engaged in was directly causing inmates to be seriously injured or killed but ignored the risk while the body count continued to rise. *Id. at ¶ 46.*

Following Mr. Martin's murder, Florida Department of Corrections spokesman Lewis admitted that under the supervision of Defendants Scott, the Department of Corrections did not have a system in place to identify inmates as predator or non-predator. *Id. at ¶ 109.* The Department of Corrections admitted that "database reports do not replace the sound correctional judgment of staff. There should be some additional consideration before placing a 6'04" 260 lb. inmate with

6

a life sentence in a cell with a 5'4" 140 lb. inmate with a release date 12 months away." *Id.* at ¶ *110.*

While Defendant Scott may claim otherwise, the above facts are not mere "general allegations." Rather, Plaintiff identified numerous instances, under Defendant Scott's supervision, where corrections officers were permitted to engage in wrongdoing without consequence; thereby evidencing the existence of a longstanding policy or custom of same.

Defendant Scott argues that since the Executive branch of government is not solely responsible for setting policy or agency funding levels, he cannot be held liable for policy or funding failures. Defendant Scott, however, fails to acknowledge that the office of governor has specific state constitutional duties with respect to both policymaking and funding. When Defendant Scott knowingly failed to execute his duties properly, the other branches of government were precluded from properly performing their duties. Moreover, to hold Defendant Scott liable, Plaintiff need only establish that Defendant Scott was personally involved in causing the constitutional injury; not that Defendant Scott *solely* caused the constitutional injury.

Moreover, it is ludicrous to claim that because all wrongdoing did not occur in the Santa Rosa Correctional Institution, but rather was dispersed throughout the Department of Corrections, Defendant Scott was not placed on the requisite notice that that his policies and supervision would cause constitutional injuries to occur in

Santa Rosa.  To the contrary, the very fact that the harm was occurring across the entire Department of Corrections (as opposed to just in a single institution) is strong evidence and notice that a failure of supervision at the highest level of the Executive branch of government was causing the harm that was occurring in each institution.

Finally, Defendant Scott argues that because it was the corrections officers, and not he, who ignored Mr. Martin's screams while Mr. Martin was being raped and beaten to death, he cannot be held liable for failing to intervene.  Aside from being offensive, Defendant Scott's argument is without merit. Had Defendant Scott intervened at the funding, policymaking, and supervision level to create a safe environment for inmates as he was authorized and required to do, instead of intervening solely to cover-up wrongdoing, the constitutional injury would not have occurred.

<u>**CONCLUSION**</u>

Defendant Scott has been placed on sufficient notice of the claims asserted against him. While Defendant Scott may ultimately prevail in this litigation, Plaintiff should be at least permitted to conduct reasonable discovery and have the claims against Defendant Scott be decided based upon a factually developed record. Therefore, it is respectfully requested that the Court deny Defendant Scott's motion to dismiss.

**Respectfully Submitted,**


Date: **September 26, 2016**

**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA (Pensacola)

| | |
|---|---|
| **RUSSELL K. SHARBAUGH,** | : **No. 3:16-CV-126** |
| **Plaintiff,** | : |
| | : **Chief Judge M. Casey Rodgers** |
| **v.** | : **Magistrate Judge Elizabeth M. Timothy** |
| | : |
| **JOHN C. BEAUDRY, et al.,** | : **CIVIL ACTION – LAW** |
| **Defendants.** | : **JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s):

**JAMES A. TALBERT, ESQUIRE**
Email: atalbert@qpwblaw.com

**WILLIAM B. CARTER, JR, ESQUIRE**
Email: ben@djmf-law.com

**MICHELLE L. HENDRIX, ESQUIRE**
Email: mhendrix@florida-law.com

**WILLIAM P. MARTIN, ESQUIRE**
Email: peter@djmf-law.com

**ELIZABETH N. PALMER, ESQUIRE**
Email: npalmer@wpslawyers.com

**ALBERT BOWDEN, ESQUIRE**
Email: al.bowden@myfloridalegal.com

**LAURA B. FARAGASSO, ESQUIRE**
Email: lbfaragasso@henryblaw.com

**DEVON M. JACOB, ESQUIRE**

**Date:  September 26, 2016**