**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA (Pensacola)**

| | |
|---|---|
| **RUSSELL K. SHARBAUGH,** | : **No. 3:16-CV-126** |
| **Plaintiff,** | : |
| | : **Chief Judge M. Casey Rodgers** |
| **v.** | : **Magistrate Judge Elizabeth M. Timothy** |
| | : |
| **JOHN C. BEAUDRY, et al.,** | : **CIVIL ACTION – LAW** |
| **Defendants.** | : **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM**
**IN OPPOSITION TO DEFENDANT DENMON'S**
**MOTION FOR JUDGEMENT ON THE PLEADINGS**

**AND NOW** comes the Plaintiff, Russell K. Sharbaugh, as the Personal Representative of the Estate of Ricky Dean Martin, by and through his undersigned counsel, to file this Memorandum in Opposition to Defendant Denmon's Motion for Judgment on the Pleadings.

## RELEVANT PROCEDURAL HISTORY

On August 11, 2016, Plaintiff filed an Amended Complaint (Doc. 43). On August 22, 2016, Defendant Beaudry filed an Answer (Doc. 45). On August 25, 2016, Defendants, Dufrene, Johnson, and Smith, filed Answers (Docs. 48-50). On September 2, 2016, Defendant Denmon filed an Answer (Doc. 56).

On February 9, 2017, Defendants, Dufrene, Johnson, and Smith, filed a Motion for Judgment on the Pleadings (Doc. 66). On February 23, 2017, Defendant Beaudry filed a Motion for Judgment on the Pleadings (Doc. 69). On March 16, 2017, Defendant Denmon filed a Motion for Judgment on the Pleadings (Doc. 74). This Memorandum is filed in opposition to Defendant Denmon's Motion for Judgment on the Pleadings.

## STATEMENT OF FACTS

For a complete recitation of the relevant facts, Plaintiff respectfully refers the Court to the Amended Complaint (Doc. 43).

## QUESTION PRESENTED

Should the Court rule consistent with the majority of courts, and deny the Defendant's motion for judgment on the pleadings that seeks to limit the compensatory damages available for constitutional injuries causing death, to the same damages that are available in actions involving mere negligence?

## ARGUMENT

**The Court should rule consistent with the majority of courts, and deny the Defendant's motion for judgment on the pleadings that seeks to limit the compensatory damages available for constitutional injuries causing death, to the same damages that are available in actions involving mere negligence.**

Defendant Denmon has filed a motion for judgment on the pleadings,[1] seeking to limit the Estate's recovery of compensatory damages in the instant matter to the

---

[1] Defendant Denmon filed an Answer in which he denied the material facts. Based upon this fact alone, the Defendant's motion should be denied. See, e.g., Shapiro v. Marian Radiological Assocs. Inc., 73 Pa. D. & C.4th 318, 322 (Pa.Com.pl. 2005) ("in order to grant a motion for judgment on the pleadings, the facts must be undisputed.")

categories of damages specified in Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, *et seq.,* that limits compensatory damages in actions involving mere negligence.

The Supreme Court has held that 42 U.S.C. § 1983 is "deficient" because it does not provide for the survival of civil rights actions. Robertson v. Wegmann, 436 U.S. 584 (1978). The survivorship of § 1983 actions is governed, instead, by § 1988(a), which provides that when a federal law is "deficient" the laws of the forum state apply, so long as they are not "inconsistent with the Constitution and laws of the United States." Id. at 588-89. Accordingly, Robertson instructs that a court must follow the state law unless it is inconsistent with the policies underlying §1983. Those policies are (1) to compensate the victim for the deprivation of his federal rights and (2) to deter such future violations. Robertson, 436 U.S. at 591.[2]

Florida's Wrongful Death Act, Fla. Stat. §§ 768.16, *et seq.*, combines the survival and wrongful death statutes, into a single statute. Florida Clarklift, Inc. v. Reutimann, 323 So.2d 640, 642 (Fla. 2d DCA 1975). The statute, however, does not permit a victim of mere negligence to recover for his pain and suffering or his hedonic damages. Fla. Stat. § 768.21. Therefore, the question presented by the Defendant's motion, is whether or not applying the damage limitations imposed by

---

[2] Robertson refers to "situations in which there is no claim that the illegality caused the plaintiff's death." Robertson, 436 U.S. at 592.

Florida's wrongful death statute in negligence cases, is inconsistent with the underlying policies of § 1983. See Estate of Gilliam ex rel. Waldroup v. City of Prattville, 639 F.3d 1041, 1046 (11th Cir. 2011) cert. denied, 132 S.Ct. 817 (2011).

In the Estate of Breedlove v. Orange County Sheriff's Office, 6:1 l-cb-2027-Orl-31, 2012 WL 2389765 (M.D. Fla., June 25, 2012), the Florida District Court held that the "mere exclusion of [one aspect] of decedent's damages for pain and suffering [does not render] the [entire] Florida wrongful death statute inconsistent with the compensatory purpose of § 1983." see also Degraw v. Gualtieri, 2013 WL 3462332 (M.D. Fla. 2013) (consistent). To the contrary, a significant number of courts have concluded that when a violation of federal civil rights results in the death of the victim, state statutes limiting the remedies of the victim's estate and family members are not consistent with the purposes of § 1983. See Berry v. City of Muskogee, 900 F.2d 1489, 1499-1507 (10th Cir. 1990); Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1187-90 (7th Cir. 1985); Jaco v. Bloechle, 739 F.2d 239, 241-45 (6th Cir. 1984); Andrews v. Neer, 253 F.3d 1052 (8th Cir. 2001); McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983); Chaudhry v. City of Los Angeles, 751 F.3d 1096 (9th Cir. 2014); Gilbaugh v. Balzer, No. Civ-99-1576-AS, 2001 WL 34041889, at *5-7 (D.Or. June 7, 2001); Garcia v. Whitehead, 961 F.Supp. 230, 232-33 (C.D. Cal. 1997); Guyton v. Phillips, 532 F.Supp. 1154, 1164-66 (N.D. Cal. 1981)).

4

The fact that Florida's current position on the issue is in the minority, is not surprising, when considered in light of the legislative history of § 1983. "Congress intended significant recompense when a constitutional violation caused the death of the victim. The general legislative history of the 1871 act makes clear that death was among the civil rights violations that Congress intended to remedy." Berry, 900 F.2d at 1501. "President Grant's message to Congress in 1871 described conditions in the South that 'rendered life and property insecure' and urged legislation that would 'effectually secure life, liberty, property, and the enforcement of law in all parts of the United States.'" Id. at 1502 (quoting Cong. Globe, 42d Cong., 1st Sess. 236 (1871)) (brackets omitted). "[I]n both Houses [of Congress], statements of the supporters of [section 1983] corroborated that Congress . . . intended to give a broad remedy for violations of federally protected civil rights." Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 685 (1978).

As the Supreme Court has instructed, 42 U.S.C. § 1983 was designed to accomplish at least two purposes – "compensating those injured" and "preventing official illegality." Robertson, 436 U.S. at 592. The Supreme Court has noted that section 1983's "unique remedy make[s] it appropriate to accord the statute 'a sweep as broad as its language.'" Wilson v. Garcia, 471 U.S. 261, 272 (1985) (quoting United States v. Price, 383 U.S. 787, 801 (1966)), superseded by statute on other grounds, 28 U.S.C. § 1658(a).

While the Eleventh Circuit has not yet addressed the issue before this Court, the Second, Seventh, Eighth, Ninth, and Tenth Circuits, have.  All five circuit courts have ruled *contrary* to the Defendants' position.[3]

In Bell v. City of Milwaukee, a police officer shot and killed the decedent, planted a knife on his body, and then lied about the circumstances of the killing. Bell v. City of Milwaukee, 746 F.2d 1205, 1215-18 (7th Cir. 1984), overruled in part on other grounds, 414 F.3d 783 (7th Cir. 2005). The decedent's siblings and estate brought suit pursuant to § 1983. Id. at 1224. The Seventh Circuit rejected Wisconsin laws precluding recovery of damages for loss of life and punitive damages in survival actions. Id. at 1239-41. The court explained, "if Section 1983 did not allow recovery for loss of life notwithstanding inhospitable state law, deterrence would be further subverted since it would be more advantageous to the unlawful actor to kill rather than injure." Id. at 1239. Further, "[t]o disallow punitive damages," the court said, "would seriously hamper the deterrence effect of Section 1983." Id. at 1241.

To counter the reasoning stated in Bell, Defendants Dufrene, Johnson, and Smith, cited Peacock v. Terhune, 2002 WL 459810 (E.D. Ca. 2002), and Degraw v. Gualtieri, 2013 WL 3462332 at *6 (M.D. Fla. 2013) ("the prospect of incurring pain

---

[3] But see Frontier Ins. Co. v. Blaty, 454 F. 3d 590, 630 (6th Cir. 2006) (lamenting the fact that the Court had no discretion to not apply Michigan's Wrongful death statute). This decision relies on Congress' apparent intent to leave the issue to the states to decide.  Notably, however, Florida implemented the statute that imposes the damages limitation well after Congress enacted § 1988.

6

and suffering or hedonic damages in court is likely not going to be a weighing factor in whether or not a state official exercises such behavior."). Respectfully, the Degraw decision fails to account for certain realities regarding the identity of § 1983 tortfeasors. Moreover, while Bell reached the correct result, it did so for the wrong reason.

If the Court were to review the multitude of civil rights lawsuits filed throughout the United States, the Court will undoubtedly find that the majority of §1983 tortfeasors are government employees. This is hardly surprising, since a necessary element in a §1983 action is that the defendant acted "under color of state law."

It is likely a true statement that tortfeasors don't pause before engaging in conduct that results in constitutional injuries to calculate their total financial exposure in the event they are held liable to their victim. However, this Court would be remiss to decide this issue with consideration given solely to the hypothetical thoughts of a tortfeasor in his moment of action. Rather, this Court should also consider the impact its decision will have on the policies and practices that control whether or not a tortfeasor ever has an opportunity to act.

More specifically, while financial risk calculations may not impact the contemporaneous decisions of tortfeasors in their moment of action, such financial considerations absolutely impact those with the authority – the policymakers and

risk managers – to change the behavior, access, and authority, of potential tortfeasors.   To understand why, one must understand who pays the damages awarded against a government tortfeasor. The majority of government employees who are employed in positions where they would have the access and authority necessary to cause private citizens to suffer constitutional injuries, are essentially, judgment-proof.  By way of example, when Defendants Beaudry and Denmon were employed by the Department of Corrections, it is believed that they earned approximately $30,000 annually.[4]

In Florida, government employees are indemnified by the government for compensatory, but not punitive damages. This, of course, begs the question, of why Defendants, who will be 100% indemnified by the State of Florida for compensatory damages, would file motions for judgment on the pleadings that are solely focused on trying to limit the compensatory damages that may be awarded?

The answer lies in the reality that has been caused by decisions like <u>Degraw</u>. As a result of decisions like <u>Degraw</u>, policy and practice decisions related to the protection of civil rights in the Florida department of corrections have been reduced to a cost/benefit analysis.[5]  The lawyers who were retained to defend the Individual Defendants, are paid by the State of Florida. The expectation is that these lawyers

---

[4] <u>See</u> http://salaries.myflorida.com. It is undersigned counsel's understanding that said Defendants are now employed in the private sector, earning even less money annually.
[5] Hence Governor Scott's decision to slash the budget of the DOC.

will also act to protect the financial interests of the State of Florida, so long as doing so will not negatively impact their clients' respective positions. The State of Florida has little concern, if any, about any potential award of punitive damages in this case, because, as defense counsel and risk management for the State of Florida has informed undersigned counsel on several occasions, the State of Florida does not intend to indemnify the Defendants for punitive damages. The State of Florida's only concern is the amount of compensatory damages available to the decedent's estate.

So, let's examine the compensatory damages in this case. When Ricky Martin was young, his parents were murdered. It is believed that Ricky suffered from a learning disability.  As a result, his earning potential was low. Regardless, Ricky loved living. The crimes that landed Ricky in prison resulted from poor choices that he made that were motivated by a desire to obtain the funds necessary to keep the home that he had with his pregnant wife and daughter.  While it is true that Ricky permitted his children to be adopted by his father-in-law, Ricky did this to prevent the State from placing his children in foster care, at a time when he was incarcerated, and the State had decided that his wife was unable to care for the children.  Ricky was excited that his prison sentence was nearing its end, and he could not wait to be reunited with his wife and children.

Ricky had little, if any, earning capacity; he had no assets; his children were legally adopted; the State of Florida paid for his cremation; and the State of Florida

likely holds a lien for the cost of his incarceration and cremation.  On paper, the financial impact caused by Ricky's death is non-existent – *not even the cost of a casket*.  Therefore, if the Court reaffirms the <u>Degraw</u> decision, the State of Florida will reduce its financial exposure in this case to $0. The ability to reduce the financial exposure in a death case – especially when egregious preventable conduct caused horrific constitutional injuries – is hardly an incentive for the State of Florida to invest in changing the behavior of present or future tortfeasors in its employ.

Importantly, Ricky's death was not caused by mere negligence.  As such, the damages available to Ricky's Estate should not be limited to the same damages that are available in a case involving mere negligence; especially when the limitation makes little sense.  By way of example, in death cases based in negligence, the Florida Legislature substituted the survivor's pain and suffering, for the decedent's pain and suffering. These elements of damages, however, are completely different. The physical pain that Ricky experienced while being beaten to death (after having already been raped and tortured), has absolutely nothing to do with the pain and suffering a survivor might feel for having lost a future relationship with Ricky.

Application of Florida's Wrongful Death Act in this case will completely deny the Estate any recovery.  To deny the Estate the only loss actually suffered by Ricky – *his* pain and suffering, and *his* hedonic damages – is hardly the "broad remedy for violations of federally protected civil rights" that Congress intended,

10

see Monell, 436 U.S. at 685, and directly undermines the policies on which § 1983 is based – "compensating those injured" and "preventing official illegality." See Robertson, 436 U.S. at 592.

In Berry v. City of Muskogee, the decedent, an inmate was killed by fellow prisoners. Berry v. City of Muskogee, 900 F.2d 1489, 1492 (10th Cir. 1990). His widow brought a § 1983 suit against the city for violation of the Eighth Amendment, alleging that jail officials' deliberate indifference to the decedent's safety caused his death. Id. The Tenth Circuit rejected an Oklahoma law limiting damages in survival actions to property loss and "loss of decedent's earnings between the time of injury and death." Id. at 1504. The court explained, "The [state limitation laws] are not suitable to carry out the full effects intended for § 1983 cases ending in death of the victim." Id. at 1506; see also Andrews v. Neer, 253 F.3d 1052 (8th Cir. 2001) ("Our careful consideration of the competing arguments on this issue leads us to conclude that the approach of the Tenth Circuit, as set forth in Berry, represents the correct assessment of the damages available in § 1983 death cases.")

In McFadden v. Sanchez, 710 F.2d 907 (2d Cir. 1983), the decedent was killed by police officers during the course of an arrest, and a jury awarded punitive damages. Id. at 908-10. The Second Circuit rejected a New York law barring punitive damages in survival actions. The court explained, "we have no doubt that

limitations in a state survival statute have no application to a section 1983 suit brought to redress a denial of rights that caused the decedent's death." Id. at 911.

In Chaudhry v. City of Los Angeles, 751 F.3d 1096 (9th Cir. 2014), the decedent was shot and killed by a police officer.  The jury found that the officer used excessive force, that the excessive force caused the death, and that the officer acted "reckless[ly], oppressive[ly], or malicious[ly]." The jury awarded $700,000 to the Plaintiffs for their wrongful death claim under state law, and $1,000,000, based on the decedent's pain and suffering, to the Estate for its excessive force claim under § 1983. The district court denied motions for a new trial, and for judgment as a matter of law as to the $700,000 award. The district court granted a motion for judgment as a matter of law as to the $1,000,000 award. It held that California law prohibits recovery for pain and suffering in survival actions, and that this prohibition is incorporated into § 1983. In reversing the district court, the Ninth Circuit stated, "Consistent with *Berry, Bell*, and *McFadden*, we hold that California's prohibition against pre-death pain and suffering damages limits recovery too severely to be consistent with § 1983's deterrence policy." Id. at 1105.

It is undisputed that actions brought pursuant to 42 U.S.C. § 1983, seek damages for egregious conduct that rises above mere negligence.  As such, Florida's Wrongful Death Act, which places limitations on the categories of damages

available for recovery in deaths caused by negligence, should not apply.[6] To do so would devalue constitutional injuries, and thwart the deterrent goal incorporated into § 1983. Moreover, in the instant case, it would completely deny any recovery to the estate.

## CERTIFICATE OF COMPLIANCE
## WITH NORTHERN DISTRICT OF FLORIDA LOCAL RULE 7.1(F)

This Memorandum complies with the word limitation of N.D. Fla. Loc. R. 7.1(F) because this Memorandum contains 1,717 words, excluding the parts of the Memorandum exempted by N.D. Fla. Loc. R. 7.1(F).

---

[6] It must be noted that the Florida Civil Rights Act of 1992, while it does not yet speak to violations of civil rights that cause death, with respect to the areas that it does address (education, employment, housing, and public accommodations), the statute provides, "The court may also award compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages[,]" and specifically excluded any damage limitations. Title XLIV 760.11(5). It is unlikely that the Florida Legislature, in limiting damages available in negligence actions, intended that the damages that would be available for civil rights violations would be similarly limited.

## <u>CONCLUSION</u>

It is respectfully requested that the Court deny the Defendants' Motions for

Judgment on the Pleadings.


**Respectfully Submitted,**


**Date: March 30, 2017**

_____
**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA (Pensacola)

| | |
|---|---|
| **RUSSELL K. SHARBAUGH,** | **: No. 3:16-CV-126** |
| **Plaintiff,** | **:** |
| | **: Chief Judge M. Casey Rodgers** |
| **v.** | **: Magistrate Judge Elizabeth M. Timothy** |
| | **:** |
| **JOHN C. BEAUDRY, et al.,** | **: CIVIL ACTION – LAW** |
| **Defendants.** | **: JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below, I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s):

**JAMES A. TALBERT, ESQUIRE**
Email: atalbert@qpwblaw.com

**MICHELLE L. HENDRIX, ESQUIRE**
Email: mhendrix@florida-law.com

**ELIZABETH N. PALMER, ESQUIRE**
Email: npalmer@wpslawyers.com

**LAURA B. FARAGASSO, ESQUIRE**
Email: lbfaragasso@henryblaw.com

**WILLIAM B. CARTER, JR, ESQUIRE**
Email: ben@djmf-law.com

**WILLIAM P. MARTIN, ESQUIRE**
Email: peter@djmf-law.com

**ALBERT BOWDEN, ESQUIRE**
Email: al.bowden@myfloridalegal.com

**DEVON M. JACOB, ESQUIRE**

**Date:  March 30, 2017**