# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**RUSSELL K SHARBAUGH, as the
Personal Representative of the
ESTATE OF RICKY DEAN MARTIN,**

    **Plaintiff,**

    **v.**                                        **Case No. 3:16cv126-MCR-EMT**

**JOHN C BEAUDRY, et al.,**

    **Defendants.**

_____/

## ORDER

In this civil rights suit, Plaintiff Russell Sharbaugh ("Sharbaugh"), as Personal Representative of the Estate of Ricky Dean Martin, alleges that Ricky Dean Martin was brutally beaten, raped, and murdered by his cellmate while serving a state prison sentence. Sharbaugh claims that the attack resulted from the deliberate indifference of the Defendants (prison officials and supervisors) to the known substantial risk of harm Martin faced from the cellmate, in violation of the Eighth Amendment.[1] *See* 42 U.S.C. § 1983. Sharbaugh seeks damages for Martin's emotional and physical

_____

[1] The allegations of the Amended Complaint, ECF No. 43, are incorporated herein by reference and will not be recounted in full.

Case No. 3:16cv126-MCR-EMT

torture, injury, and trauma; immense pain and suffering; humiliation; terror; and death ("hedonic damages").[2]

Pending are Defendants' Motions for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure 12(c) on the ground that in this case, noneconomic damages are not available as a matter of law on Sharbaugh's § 1983 claim because Martin died as a result of the alleged constitutional violation.[3] Defendants argue that because § 1983 does not speak to damages or the survival of a cause of action after death, it is "deficient" for purposes of 42 U.S.C. § 1988, and therefore, pursuant to § 1988, the Court must look to state law and award damages consistent with Florida's Wrongful Death Act ("FWDA"), Fla. Stat. §§ 768.16–768.26, which does not permit recovery for a decedent's pre-death pain and suffering.[4] Sharbaugh opposes the motions, arguing that, because the FWDA precludes a claim for the

---

[2] Hedonic damages are "damages awarded for the deprivation of the pleasure of being alive." Bryan A. Garner, *Garner's Dictionary of Legal Usage* 405 (3rd ed. 2011).

[3] *See* ECF No. 66 (filed by Defendants Ricky Dufrene, Freddy Johnson, and Jeffrey Smith); ECF No. 69 (Defendant John Beaudry); and ECF No. 74 (Defendant Jacob Denmon). Although Defendants filed three separate motions for judgment on the pleadings, each motion makes the same arguments, and thus, the Court will consider them together.

[4] The FWDA permits recovery of economic damages to the estate when personal injury results in death but does not allow recovery for the decedent's pre-death pain and suffering or hedonic damages. The FWDA provides for damages, including pain and suffering damages suffered by survivors, as specified in Fla. Stat. § 768.21, but no survivors are claiming damages in this suit.

Case No. 3:16cv126-MCR-EMT

decedent's pain and suffering, it is inconsistent with the purposes of § 1983 and should not govern the damages award in this case. After an exhaustive review of the matter, the Court concludes that the FWDA, which fills a gap in § 1983 by allowing for the survival of Martin's cause of action against Defendants but precluding a claim for decedent's pain and suffering, is not inconsistent with the policies underlying federal law. Defendants' motions will be granted.

## I. Standard of Review

A Rule 12(c) motion for judgment on the pleadings for failure to state a claim is considered under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(h)(2)(B) (providing that failure to state a claim can be raised by a motion under Rule 12(c)); *see also 316, Inc. v. Maryland Cas. Co.*, 625 F. Supp. 2d 1179, 1181 (N.D. Fla. 2008). Thus, the Court considers whether the plaintiff has pled a plausible claim, "accepting the facts in the complaint as true and viewing them in the light most favorable to the nonmoving party." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (stating the plausibility standard).

Case No. 3:16cv126-MCR-EMT

## II. Discussion

### A.    Sections 1983 & 1988

Section 1983 provides a cause of action for injuries caused by official actions taken under color of state law in deprivation of a person's constitutional rights.  42 U.S.C. § 1983.  The Supreme Court has characterized § 1983 as creating "'a species of tort liability' in favor of persons who are deprived" of their rights under the Constitution.  *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)).  As one of the "Reconstruction civil rights statutes," § 1983 is given "a sweep as broad as [its] language." *Robertson v. Wegmann,* 436 U.S. 584, 590 (1978) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 97 (1971)).

The exercise of jurisdiction under § 1983 and the means of enforcing its mandate are set out in § 1988, which provides:

> The jurisdiction in civil and criminal matters conferred on the district courts by [the civil rights laws] . . . shall be exercised and enforced in conformity with [federal laws], so far as such laws are suitable to carry the same into effect; but, in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and

laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

42 U.S.C. § 1988(a). Section 1988 recognizes that in certain respects, the civil rights statutes are "unsuited or insufficient to furnish suitable remedies," 42 U.S.C. § 1988, because "federal law simply does not cover every issue that may arise in the context of a federal civil rights action." *Robertson*, 436 U.S. at 538. Thus, to fully carry the civil rights statutes into effect, § 1988 requires courts to conduct a three-step inquiry to determine "the rules of decision applicable to civil rights claims." *Wilson v. Garcia*, 471 U.S. 261, 267 (1985) (superseded by statute on other grounds); *see also Estate of Gilliam v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011). First, courts look to federal law, and consider whether it is "suitable to carry [the civil and criminal civil rights statutes] into effect." *Estate of Gilliam*, 639 F.3d at 1045 (citing § 1988) (alteration in original). Second, if federal law is not "adapted to the object" or is "deficient" in providing suitable remedies, courts must apply common law, as modified by state law. *Id.* (quoting § 1988). Third, if state law is required to fill a gap in federal law, courts also must consider whether applying the state law would be "inconsistent with the Constitution and laws of the United States," and if so, the

state law is not to be applied, because the federal interest predominates. *Id.* (quoting § 1988); *see also Wilson*, 471 U.S. at 267.

To determine whether federal law is suitable to carry the civil rights statutes into effect and, if not, whether the applicable state law is inconsistent with federal law, courts must consider not only the text of the federal statute, which in this case is § 1983, but also its underlying policies and principles. *See Robertson*, 436 U.S. at 590; *see also Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 240 (1969). In *Robertson,* the Supreme Court described the congressional policies underlying § 1983 as twofold—(1) to provide compensation to the injured person and (2) to deter abuses of power by state actors. *See Robertson,* 436 U.S. at 590. To fulfill these goals, compensation under § 1983 must be "tailored to the interests protected by the particular right in question" and must be sufficient "to accord meaningful compensation." *Carey*, 435 U.S. at 259. In turn, by awarding appropriate compensation, courts necessarily satisfy Congress's second goal of deterrence. "[T]here is no evidence that [Congress] meant to establish a deterrent more formidable than that inherent in the award of compensatory damages." *Id.* at 256; *see also Stachura*, 477 U.S. at 307 ("Deterrence is also an important purpose of this

system, but it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses.").

Clearly, § 1983 was intended to hold state actors liable when their unconstitutional actions result in death.[5]  *See Brazier v. Cherry*, 293 F.2d 401, 404-05 (5th Cir. 1961),[6] *cert. denied*, 368 U.S. 921 (1961).  However, as discussed *infra,* neither the common law nor § 1983 specifies a measure of damages to apply when death results from a constitutional deprivation.  *See Moor v. Alameda Cty.,* 411 U.S. 693, 702 n.14 (1973), *overruled in part on other grounds, Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).  Because the issue of damages in this case is so closely linked to the survival of Martin's personal injury claim, the Court finds that a full discussion of both damages and survival is necessary, even though the parties do not dispute that § 1983 is "deficient" as to whether Martin's §1983 claim generally

---

[5] The former Fifth Circuit has noted the existence of a "clear congressional policy [in § 1983] to protect the life of the living from the hazard of death caused by unconstitutional deprivations of civil rights," stating that "it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but withdraw the protection of civil rights statutes against the peril of death." *Brazier v. Cherry*, 293 F.2d 401, 404-05 (5th Cir. 1961) (citing *Monroe v. Pape*, 365 U.S. 167, 174–76 (1961), *overruled in part on other grounds*, *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978)).

[6]*See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting the case law of the former Fifth Circuit developed before October 1, 1981, as precedent in this Circuit).

survives his death.

The Supreme Court has explained that at the time § 1983 was enacted in 1871, members of Congress, many of whom were lawyers, were undoubtedly familiar with the then-existing compensation principles of general tort law and clearly understood that by holding state actors liable in a civil suit for injuries to persons, they were incorporating into the Civil Rights Act "the principle that damages are designed to compensate persons for injuries caused by the deprivation of rights."[7]  *See Carey*, 435 U.S. at 254–57; *see also Stachura*, 477 U.S. at 307 ("Congress adopted this common-law system of recovery when it established liability for 'constitutional torts.'").  The Supreme Court has also explained that courts may apply both federal and state rules on damages, "whichever better serves the policies expressed in the federal statutes" and that "[t]he rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired."

---

[7] The Supreme Court further explained that constitutional rights "do not exist in a vacuum" but serve the purpose of "protect[ing] persons from injuries to particular interests, and their contours are shaped by the interests they protect," which must be considered in fashioning adequate damages.  *Carey*, 435 U.S. at 254. Thus, when discussing damages under § 1983, the Supreme Court applies general tort principles, which it views as "provid[ing] the appropriate starting point for the inquiry under § 1983."  *Id.* at 258; *see also id.* at 255 & 257-59 (noting "over the centuries, the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights").

*Sullivan*, 396 U.S. at 240. Thus, despite § 1983's failure to address damages expressly, where a victim suffers personal injury from a constitutional deprivation (and lives to bring suit), federal common law principles regarding compensation for personal injury, *see Carey*, 435 U.S. at 254–57, *Stachura*, 477 U.S. at 307, are well-developed and generally adequate to compensate the constitutional injury without a need to consider the law of any particular state. In other words, there is no gap to fill with state law when the victim survives the injury. In such cases, compensatory damages include monetary losses as well as pain, impairment of reputation, personal humiliation, and mental anguish and suffering. *See Stachura*, 477 U.S. at 307. Punitive damages are also available in appropriate cases. *See id.* at 306 n.9.

When a victim dies, however, either from an unrelated intervening cause or, as alleged here, as a result of the constitutional deprivation at issue, § 1983 is "deficient" because it does not expressly provide a rule for determining whether the claim for damages survives. *See Robertson*, 436 U.S. at 588–90; *Estate of Gilliam*, 639 F.3d at 1045; *see also Brazier*, 293 F.2d at 403 (recognizing that § 1983 does "not expressly refer to actions for death or the survival of claims arising from civil rights violations"). Historically, under common law, either federal or state, there was no rule of survival; a claim for damages died with the person. *See Robertson*,

436 U.S. at 589 (stating injured party's personal claim was extinguished in common law on the death of either the injured party or the wrongdoer). To counter this result and ameliorate the harsh common law rule, states enacted statutes allowing a decedent's claims to survive after death and/or creating a new cause of action for wrongful death, detailing which claims survived and which parties could pursue them.[8] *See Brazier*, 293 F.2d at 403 (recognizing that because "claims for injury to the person die with the victim" under common law, any "amelioration of the harshness of this principle must come from legislation"). Congress knew that such state statutes existed when it first enacted § 1988 as part of the Civil Rights Act of April 9, 1866, and in the statute, expressly directed courts to apply those state laws. *Robertson*, 436 U.S. at 589, 593 n.11 (stating § 1988 provides that "the content of the federal remedial rule" can be found in state law). According to the Supreme

---

[8] In Florida, a statute providing for the survival of actions after the death of a party was on the books as early as 1828, and still remains. *See* Fla. Stat. § 46.021 (2015) ("No cause of action dies with the person.") (History—s.30, Nov. 23, 1828). Also, although no cause of action existed for wrongful death under Florida common law, there has long been a separate statutory wrongful death cause of action in Florida. *Capone v. Phillip Morris USA, Inc*., 116 So. 3d 363, 374 (Fla. 2013). As discussed later in this Order, with the adoption of the FWDA in 1972, these two separate actions were merged and modified to allow an estate's personal representative to bring one comprehensive suit when personal injury results in death, but in such cases, a claim for the decedent's personal injury no longer survives as an independent cause of action. *See* Fla. Stat. § 768.20; *see also Martin v. United Sec. Servs., Inc*., 314 So. 2d 765, 767 (Fla. 1975).

Court, although the state survival statutes "vary widely with regard to both the types of claims that survive and the parties as to whom survivorship is allowed," they nonetheless provide "the principal reference point in determining survival of civil rights statutes." *Id.* at 589–90. The borrowing of state law is subject only to "the important proviso that state law may not be applied when it is inconsistent with the Constitution and laws of the United States." *Id.* at 590; *see Brazier*, 293 F.2d at 407–09 (borrowing state law).

By way of example, in *Robertson*, after finding § 1983 deficient in regards to the survival of the plaintiff's cause of action, the Court applied Louisiana's survival and wrongful death statutes pursuant to § 1988, despite the fact that doing so caused the plaintiff's § 1983 cause of action to abate. *Id.* at 591–94. The cause of action abated because the plaintiff died (for reasons not related to the alleged constitutional deprivation) during the suit and had no close relative to be substituted as plaintiff, as Louisiana law required in order for the suit to continue. *Id.* The Supreme Court found that Louisiana's law was not inconsistent with federal law because it allowed for the survival of "most tort actions," and there was no claim "that state law

generally [wa]s inhospitable to survival of § 1983 actions."[9]  *Id.* at 594–95 (also cautioning that "[w]e intimate no view . . . about whether abatement based on state law could be allowed" if the constitutional violation caused death).  The Supreme Court was careful to note that "[a] different situation might well be presented" if state law did not allow any tort actions to survive or "if it significantly restricted the types of actions that survive."  *Id.* at 594.  Nonetheless, the harsh result of abatement on the particular facts in *Robertson* was not considered a sufficient justification for finding the state law "inconsistent" with federal law.  *Id.* at 594–95; *accord Estate of Gilliam*, 639 F.3d at 1045 (similarly applying Alabama's survivorship statute to find that the § 1983 cause of action abated on the plaintiff's pre-suit death, where the civil rights violation had not caused the death).

Long-standing precedent in this circuit has also borrowed state law as the federal rule pursuant to § 1988 in order to give effect to § 1983, where a constitutional deprivation caused personal injury that resulted in death.  *See Brazier*,

---

[9] The Supreme Court observed that § 1988's "statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues."  *Robertson*, 436 U.S. at 593 n.11.  Additionally, the Supreme Court commented that although the claim abated under state law, the Court's rationale would not preclude survival of a § 1983 action where the state law allowed it nor would its holding preclude recovery by survivors who sue under § 1983 for their own injury. *Id.* 592 n.9.

293 F.2d at 405–09 (borrowing Georgia's survival and wrongful death statutes).[10]

In *Brazier*, an individual died after being unlawfully arrested and brutally attacked by state police officers. The decedent's widow brought suit under § 1983. The district court dismissed the suit for lack of jurisdiction, finding that no *federal* statute provided for the survival of the decedent's personal injury claim or created a wrongful death cause of action. *Brazier v. Cherry,* 188 F. Supp. 817, 821 (M.D. Ga. 1960) (dismissing because there was "no federal statute giving this plaintiff a cause of action for the wrongful death of her husband"), *rev'd*, 293 F.2d 401 (5th Cir. 1961). The former Fifth Circuit reversed the dismissal, finding that § 1988 expressly called for the incorporation of Georgia law to fill the survival gap. *Brazier*, 293 F.2d at 409–10. The court stated, "[t]o whatever extent [state law] helps, it is automatically available . . . because Congress says so." *Id.* at 409. The court explained that under § 1988(a), state law "does not add to the substantive right" but "merely assures that there will be a 'remedy'—a way by which that right will be vindicated—if there is a violation of it." *Id.* at 409; *see also id.* at 407 ("There is [ ]

---

[10] *See also Carringer v. Rodgers*, 331 F.3d 844, 849–50 & n.9 (11th Cir. 2003) (noting a debate among the circuits regarding the right to wrongful death recovery and emphasizing that the Supreme Court has not altered this circuit's binding holding of *Brazier*, which found that § 1988 permits courts to "borrow" state wrongful death statutes to determine what claims may proceed under § 1983 after death, to the extent the state law is not inconsistent with federal law).

nothing unusual about Congress adopting state law of the several states as federal law."). In *Brazier,* Georgia law allowed for the survival of a decedent's claim for homicide and for injury to the decedent's person sustained during his lifetime; it also provided for a separate wrongful death cause of action for surviving relatives to recover the full value of the decedent's life, giving full effect to § 1983. *Id.* at 407 n.15, 409 (finding no need "to differentiate between the two types of actions" where both existed).

There is no question that § 1983 is "deficient" as to survival of a decedent's claim for damages for personal injury resulting in death, and nothing in the common law fills that gap by providing a remedy after death. *See Brown v. Morgan Cty., Ala.*, 518 F. Supp. 661, 665 (N.D. Ala. 1981) (distinguishing non-death cases, in which the federal common law damages remedy is not deficient, from death cases, where the federal remedy is deficient and finding that reference must be made to state law because no remedy existed in common law). Section § 1988 directs that this gap be filled by state law. Thus, the Court looks to state law, Florida law in this instance, to fill the gap.

B.    Florida Wrongful Death Act

Before 1972, when personal injury resulted in death, two causes of action were available under Florida law.  First, because the decedent's cause of action survived under Fla. Stat. § 46.021 ("[n]o cause of action dies with the person"), the personal representative could bring suit on the decedent's behalf.  In such cases, damages were available for the decedent's pre-death pain and suffering, medical expenses, loss of earnings between the time of the accident and death, funeral expenses, and punitive damages.  *See Martin v. United Sec. Servs., Inc*., 314 So. 2d 765, 767 & n.2–6 (Fla. 1975).  Second, a separate statutory wrongful death suit could also be brought by surviving relatives seeking redress for the wrongful death, in which survivors could recover their losses, including loss of support, future estate, comfort, companionship, protection, marital relations, and their own pain and suffering.  *See id*. at 767–68.

In 1972, the Florida Legislature enacted the FWDA, combining the decedent's former survival action for pre-death personal injury with a wrongful death action and creating a new comprehensive cause of action under the FWDA for personal injury resulting in death.  *See* Fla. Stat. §§ 768.16–768.26; *see also Capone v. Phillip Morris USA, Inc*., 116 So. 3d 363, 374 (Fla. 2013).  In doing so, the Florida

Case No. 3:16cv126-MCR-EMT

Legislature determined that "[w]hen a personal injury to the decedent results in death, *no action* for the personal injury shall survive, and any such action pending at the time of death shall abate." [11] Fla. Stat. § 768.20 (emphasis added). Thus, unlike the former separate survival action under Fla. Stat. § 46.021, the FWDA does not provide for the survival of a decedent's claim for pain and suffering.[12] *See Martin*, 314 So. 2d at 770. According to the Florida Supreme Court, the FWDA contemplates a "transfer of pain and suffering damage from the decedent to the survivors." *Martin*, 314 So. 2d at 770. The Florida Supreme Court has explained this "transfer" as a substitution; that is, the formerly maintainable survival action is "modified to substitute a survivor's pain and suffering for a decedent's."[13] *Id.*; *see also Capone*, 116 So. 3d at 375 (discussing the merger of what was formerly two

---

[11] The Florida Supreme Court has construed "abatement," which is not defined under the FWDA, as meaning that a pending personal injury action is not eliminated, which would require the entire case to be dismissed, but rather, the action is merely suspended until the decedent's personal representative can be substituted as plaintiff with a reasonable opportunity to amend the complaint either to state a claim that survives or a wrongful death claim, or both (which is permitted in a case where the cause of death is disputed). *See Capone v. Phillip Morris USA, Inc.*, 116 So. 3d 363, 376-77 (Fla. 2013).

[12] Also, the FWDA does not provide for recovery of hedonic damages. *See Brown v. Seebach*, 763 F. Supp. 574, 583 (S.D. Fla. 1991) ("Hedonic damages are not made a part of Fla. Stat. § 768.21.").

[13] In other words, the decedent's pain and suffering damages are not given or transferred to the surviving relatives; the survivors' pain and suffering is compensated instead.

Case No. 3:16cv126-MCR-EMT

separate actions and noting that a decedent's claim for pain and suffering would still be available if the personal injury did not cause the death).

The Florida Supreme Court has also explained, however, that "it would be wrong" to regard the wrongful death statute's words (i.e., that "no action for the personal injury shall survive") "as a blanket abolition of survival actions for personal injuries resulting in death," because the "essence of the survival action" remains, given that the FWDA requires "tortfeasor answerability in damages to the decedent's estate for injury resulting in death." *Martin*, 314 So. 2d at 770 (construing § 768.20 as precluding a separate *lawsuit* under the survival statute, Fla. Stat. § 46.021, for the decedent's pre-death injuries); *see id.* at 770 n.18 (noting that this general survival statute still applies to preserve *other* claims that a decedent might have brought before his death). The FWDA expressly holds a person who causes death by a wrongful act liable for damages as specified in the act, Fla. Stat. § 768.19, which include economic losses of the estate (both pre-death and prospective net earnings) and economic and emotional losses of the decedent's survivors (including the survivors' own pain and suffering), *see id.* § 768.21.[14]

---

[14] More specifically, the FWDA provides that the surviving spouse may recover for loss of support and services, for the decedent's companionship and protection, and for the survivors' mental pain and suffering from the date of injury; and the estate may recover economic loss of

Having carefully considered the language of the FWDA and the Florida Supreme Court's interpretation of the statute, the Court finds that the FWDA fills the survival gap in § 1983. It does so by providing a wrongful death claim through a comprehensive statutory scheme that compensates pre-death and post-death financial losses but does not allow a decedent's pain and suffering claim to survive. Thus, unless Florida law is inconsistent with the Constitution, federal law, or the policies underlying § 1983, the Court must apply the FWDA, including its specified damages, as discussed below.

C.    Inconsistency Analysis

Plaintiff argues that the FWDA's exclusion of a remedy for Martin's pain and suffering before death is inconsistent with federal law. The Court disagrees and finds that the FWDA is not inconsistent with the language of the Constitution or any language or policies underlying § 1983. Although § 1983 is clearly intended to remedy constitutional violations resulting in death, neither § 1983 nor the common law expressly provided for the survival of a personal injury pain and suffering claim

---

earnings before death and prospectively, if the decedent left a spouse, child, or parent, as well as medical or funeral expenses. *See* Fla. Stat. § 768.21(1), (2), (6).

Case No. 3:16cv126-MCR-EMT

after death occurs, and, as noted above, through the express provisions of § 1988, Congress has placed the survival of claims in the legislative hands of the states.

Florida's comprehensive wrongful death statutory scheme expresses a clear legislative intent to hold wrongdoers liable when their actions result in death and compensates the decedent's estate as well as living survivors, who otherwise would bear the loss from the decedent's death. *See* Fla. Stat. § 768.17; *see also Brazier*, 293 F.2d at 409 (instructing that both classes of victims should be regarded). The FWDA is not hostile to § 1983 claims nor does it target § 1983 plaintiffs for adverse treatment. It makes both compensatory and punitive damages available for the wrongful death. Thus, the FWDA provides a meaningful remedy that is sufficiently "tailored to the interests protected" under § 1983 (in this case, wrongful death). This is not inconsistent with § 1983's policy of providing compensation. *See Carey,* 435 U.S. at 259. Moreover, the FWDA cannot be fairly viewed as inconsistent for "extinguishing" or "eliminating" a pre-death claim for pain and suffering, because no such claim would exist after death without a legislative enactment, which Congress chose not to provide for in either § 1983 or § 1988. "Congress certainly knows how to include survivorship provisions in federal statutes." *Estate of Gilliam*, 639 F.3d at 1049 n.14; *see generally Ziglar v. Abbasi,* No. 15-1358, 2017 WL

2621317, at *18 (U.S. June 19, 2017) ("[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant; and here that silence is telling."). Section 1983 is silent on the survival issue, and as discussed, Congress expressly directed courts to apply common *law as modified by state law* in § 1988.[15] *See Robertson*, 436 U.S. at 593 (finding "no rule of absolute survivorship" for § 1983 claims).

Sharbaugh argues that applying the FWDA in Martin's case is inconsistent with § 1983's policy of compensation because the potential damages for his estate under the state statute are minimal. According to Sharbaugh, economic damages are insufficient because Martin had a learning disability which limited his earning potential, he had no loss of earnings before death, he permitted his children to be adopted by his father-in-law, and the State of Florida paid for his cremation.

---

[15] Also, the Supreme Court cases discussing damages for actual injury in tort, which are available under federal common law, involve circumstances where the wrongdoing did not result in death, *see e.g., Stachura*, 477 U.S. 299; *Carey*, 435 U.S. 247; *Sullivan*, 396 U.S. 229, as opposed to here, where the victim died and survival of the claim depends entirely on state law. Where death results, the victim can no longer be made whole for his own pain and suffering. *See generally Estate of Breedlove v. Orange Cty. Sheriff's Office*, No. 6:11cv2027-Orl-31KRS, 2012 WL 2389765, at *3 n.3 (M.D. Fla. Jun. 25, 2012) (noting that in the FWDA, the Florida Legislature made a decision to shift non-economic damages from the decedent to the survivors, which makes damages more calculable and "allows a full recovery to the only parties who can truly be compensated—decedent's survivors").

Sharbaugh also points out that Martin suffered greatly before his death, and his pain and suffering is not compensated under the FWDA.  Sharbaugh argues that the State of Florida's financial exposure is essentially zero under this scheme and that the officers are likely to be judgment proof against any punitive award.  The inquiry under § 1988, however, is not whether the level of damages that a particular plaintiff will receive in the specific circumstances of one case is inconsistent with civil rights policies but rather whether *the state law* is inconsistent with federal policies.  *See Robertson*, 436 U.S. at 593–94 (noting a statute is not inconsistent with federal law merely because it causes a plaintiff to lose the litigation); *Estate of Gilliam*, 639 F.3d at 1045 (same).  In the absence of any federal standard for the proper measure of damages when death results or any statutory language (federal or state) authorizing the survival of pre-death personal injury damages claims, the FWDA cannot be inconsistent with § 1983, unless of course the available compensation is so inadequate as to not be considered meaningful at all.[16]  *See Carey*, 435 U.S. at 259

---

[16] In *Gilmere v. City of Atlanta*, a case that arose in Georgia, the Eleventh Circuit affirmed a damages award that included compensation for pre-death pain and suffering and, in doing so, stated that the district court was not required to follow Georgia's wrongful death damages statute because federal standards for compensating actual injuries applied.  864 F.2d 734, 739–40 (11th Cir. 1989).  The court determined that federal tort damages were sufficient and did not discuss whether the state's wrongful death statute was inconsistent with federal policy under § 1988, which

(stating § 1983 requires meaningful compensation). The Court finds that meaningful compensatory and punitive damages are *available* for the estate and survivors of a decedent under the FWDA.

On the issue of deterrence, because a wrongdoer is answerable in meaningful compensatory and punitive damages under the FWDA, the same as in any other tort case resulting in death in Florida, the Court concludes that the FWDA has significant deterrent value. *Carey*, 435 U.S. at 256. Sharbaugh argues that the deterrent value is lessened if state officials know they will not be responsible for the decedent's pain and suffering in a lawsuit and that only the survivors' pain and suffering will be compensated, but the Court is unwilling to assume that state prison officials will be influenced by potential recovery amounts to select a victim who has no survivors or dependents and then purposefully inflict greater pain and suffering on the inmate before his death. Even drawing such a "farfetched" assumption does not impair deterrence under the FWDA because punitive damages remain available for malicious conduct. *See Robertson*, 436 U.S. at 592 n.10 (explaining the Court's

---

is the analysis applied above. The Court finds *Gilmere* distinguishable based on differences in the state survival statutes, as discussed *infra*, and thus, the case is not controlling in this instance.

Case No. 3:16cv126-MCR-EMT

unwillingness to make assumptions about deterrence that are "farfetched"); *Estate of Gilliam*, 1048 n.11 (same).

Sharbaugh admits it is "likely true" that state actors do not pause to calculate their financial exposure under state law before engaging in unconstitutional conduct but argues that financial considerations do impact state employers when they set policies for conduct and risk management that affect state actors. Sharbaugh also notes that government employees are often poorly paid, judgment proof, and indemnified by their state employer for compensatory awards. *See* Fla. Stat. § 768.28(9)(a). While all of this may be true, the type of policymaking required to remedy these issues is not the function of the Court under § 1988. The Court is not free to craft a federal survival remedy for a pre-death pain and suffering claim out of whole cloth or to maximize compensation for a particular plaintiff where it is not available under the pertinent state law, unless the state statute is *inconsistent* with federal policy. *See generally Estate of Gilliam*, 639 F.3d at 1048 (absent an inconsistency between the state law and federal law, the court cannot "craft a highly specific federal common law rule of survivorship that applies to the unique facts of this case"); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 603 (6th Cir. 2006) (stating, even if the court were "inclined to think that it would be a better policy decision to

make available damages for the loss of enjoyment of life in a wrongful death suit, or that such damages might further advance the objective of federal law, section 1988 only allows [courts] to modify the state damages scheme if it is *inconsistent* with federal law"). Regardless of the amount of the award in any particular case, or whether the decedent actually has survivors to be compensated, the FWDA's comprehensive scheme provides a meaningful remedy that stands as a deterrent to an abuse of power and thus is not inconsistent with federal law or so restrictive a remedy as to require this Court to substitute a federal rule of absolute survival of claims for pre-death pain and suffering. *See Degraw v. Gualtieri*, No. 8:11-CV-720-EAK-MAP, 2013 WL 3462332, at *3–6 (M.D. Fla. July 9, 2013) (applying the FWDA, finding it is not overly restrictive or inconsistent with federal law); *Estate of Breedlove v. Orange Cty. Sheriff's Office*, No. 6:11cv2027-Orl-31KRS, 2012 WL 2389765, at *2–4 (M.D. Fla. June 25, 2012) (same). *But see Heath v. City of Hialeah*, 560 F. Supp. 840, 842 (S.D. Fla. 1983) (applying federal common law instead of the FWDA).

Sharbaugh argues that finding the FWDA not inconsistent with federal law is contrary to the decisions reached in several other circuits that have rejected state wrongful death laws in favor of a federal remedy. *See, e.g., Chaudhry v. City of Los*

*Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (finding California's survival statute limiting damages to pre-death economic losses inconsistent with § 1983 because it was too restrictive to provide adequate deterrence); *Berry v. City of Muskogee*, 900 F.2d 1489, 1501 (10th Cir. 1990) (finding Oklahoma state law deficient to punish and deter where the separate survival statute was too restrictive, concluding that "federal courts must fashion a federal remedy"); *Bass by Lewis v. Wallenstein*, 769 F.2d 1173 (7th Cir. 1985) (finding Illinois survival law too restrictive and inconsistent with federal law because it allowed damages for conscious pain and suffering but did not allow the estate recovery for loss of life, which could only be compensated in a separate wrongful death action on behalf of survivors); *Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984) (finding Ohio law inconsistent with § 1983 where it precluded the survival of a § 1983 death claim); *McFadden v. Sanchez*, 710 F.2d 907 (2d Cir. 1983) (finding that "section 1988 does not require deference to a survival statute that would bar or limit the remedies available under section 1983 for unconstitutional conduct that causes death," where the state statute precluded punitive damages). The Court finds that on a closer look, these cases are mostly distinguishable due to differences in the state statutes. For instance, the FWDA does not preclude all recovery, as in *Jaco*. The FWDA does not preclude the estate from

*any* recovery for loss of life, as in *Berry* and *Bass*; nor does it preclude an award of punitive damages, as in *McFadden*.[17] The Ninth Circuit's opinion in *Chaudhry*, concluding that the damages limitation in California law, allowing only pre-death economic losses, was too restrictive to provide adequate deterrence and thus was inconsistent with federal law, is a closer call and does lend support to Sharbaugh's inconsistency argument. However, it is clear that the statute at issue in *Chaudhry* allowed the decedent's personal injury claim to survive, which differs from the FWDA.[18] Admittedly, this is a minor distinction, given that damages for pain and suffering are expressly excluded under a related California statute. In any event, if Martin's personal injury claim had not abated under the FWDA but survived, as was

---

[17] Plaintiff also relies on *Andrews v. Neer*, 253 F.3d 1052 (8th Cir. 2001), which rejected this circuit's binding decision in *Brazier* and therefore need not be further distinguished. Additionally, Plaintiff relies on *Bell v. City of Milwaukee*, 746 F.2d 1205, 1218 (7th Cir. 1984) *overruled by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). In *Bell*, the court found in part that Wisconsin's statutes and the cases construing them precluded recovery to the estate for loss of life and thus were inconsistent with the deterrent policy of § 1983. The case was reversed on appeal. Even to the extent the conclusion on which Sharbaugh relies was not overturned explicitly on appeal (where it was determined that the parents had no constitutional right to recover loss of society and companionship of their adult son), *Bell* is distinguishable from this case because, contrary to Wisconsin's statutes, the FWDA allows economic recovery for the loss of life.

[18] Although the estate's survival suit and wrongful death action are separate under California law, the law permits the two causes of action to be joined, and the survivors are allowed to recover the pecuniary loss of the decedent's financial support. *See* Calif. Civ. Proc. Code §§ 377.61 & 377.62. This is admittedly comparable to the FWDA, but the joinder of the two causes of action was not discussed in *Chaudhry*.

the case in *Chaudhry*, the Court would follow *Gilmere*, and there would be no need

to look to state law for damages or to consider inconsistency, as discussed above.

Nonetheless, the bottom line is that none of the circuit cases listed above addresses

a comprehensive statutory scheme that provides one combined suit for the

decedent's and survivors' damages like the FWDA, and none addresses a state

statute that expressly abates the personal injury pain and suffering claim when death

results, as the FWDA does.  Due to these distinctions, the cases cited by Plaintiff do

not dictate a different result in this instance.

Although not discussed by the parties, the Court finds it necessary to address

the Eleventh Circuit's decision in *Gilmere v. City of Atlanta*, which similarly was a

death-resulting § 1983 case, but which arose out of Georgia.  864 F.2d 734 (11th

Cir. 1989).  In *Gilmere,* the decedent's administrator brought suit under § 1983 to

recover damages for the shooting and death of her brother, the decedent, by city

police officers.[19]  864 F.2d at 736.  There was no claim by surviving relatives.  In

relevant part, the district court awarded the estate $20,000 under federal common

law to compensate for the decedent's constitutional deprivations, which included

---

[19] The case has a lengthy procedural history, which is not necessary to recount for purposes of this case.

pain and suffering for his beating and shooting death, but refused to award additional damages for the value of the decedent's life under Georgia's wrongful death statute on grounds that this would amount to overcompensation where no survivors had made a claim. *See Gilmere*, 864 F.2d at 738. The Eleventh Circuit affirmed, finding no abuse of discretion because the district court was not required to apply the state wrongful death statute. *See id.* at 738–40 (observing that nothing in § 1988 or *Brazier requires* federal courts to apply state law to remedy a constitutional violation). The Eleventh Circuit determined that a federal remedy was sufficient to provide adequate compensation for the decedent's injury and death. 864 F.2d at 738–39. Implicit in *Gilmere*, however, is the distinguishing fact that Georgia's survival statute, contrary to the FWDA, expressly provided for survival of a decedent's claim for homicide *and* his claim for pre-death personal injury, including pain and suffering.[20] *See* Ga. Code Ann. § 3-505 (1978). The decision was premised on the fact that the decedent's personal injury claim for pain and suffering survived death, which, when coupled with federal common law damages, was adequate

---

[20] *See Gilmere v. City of Atlanta*, 774 F.2d 1495, 1506 n.4 (11th Cir. 1985) (*en banc*) (Tjoflat, J., concurring in part and dissenting in part) (noting, "[i]t is undisputed that in Georgia the decedent's claim for damages sustained during his lifetime survives.").

without a need to apply damages from the state's separate wrongful death statute or to consider whether that statute was inconsistent with federal law. *See Gilmere*, 864 F.2d at 738–40 (explaining that where state law provides for the survival of a decedent's claim for pre-death pain and suffering, courts should apply federal common law damages to compensate for actual injuries); *see also Estate of Gilliam*, 639 F.3d at 1047–48 n. 9 (citing *Gilmere* and commenting in *dicta* that if state law allows the claim to survive, "the kinds of damages that are recoverable are determined by federal law").[21]

Despite admonitions of the Supreme Court and the Eleventh Circuit not to resort to state law before exhausting a federal remedy, *see Gilmere*, 864 F.2d at 739 (citing *Wilson*, 471 U.S. at 268), there is no federal remedy for pre-death pain and suffering when death results *unless* state law allows the claim to survive. As discussed above, before the enactment of the FWDA in 1972, Florida's general

---

[21] This footnote comment by the Eleventh Circuit in *Estate of Gilliam* presented a hypothetical situation, because the constitutional deprivation did not cause death in that case. The court stated that only punitive damages were available under Alabama's wrongful death statute, and that, if death had resulted, the Alabama wrongful death statute would allow a § 1983 claim to be asserted but "the kinds of damages that are recoverable are determined by federal law." 639 F.3d at 1047-48 n.9 (citing *Gilmere*). The precise question in Sharbaugh's case—determining the proper measure of damages where the state law does not allow survival of a decedent's cause of action for pre-death pain and suffering when the wrongdoing causes death—was not contemplated, and in any event, the note is *dicta*.

Case No. 3:16cv126-MCR-EMT

survival statute applied in full when a personal injury resulted in death, like Georgia's. If that were still the case today, *Gilmere* would be binding in this instance, and the Court would apply federal common law to compensate for Martin's pre-death pain and suffering. But as the law currently stands, the Court's analysis is constrained by the Florida Legislature's determination that personal injury claims do not survive when death results, except to the extent economic damages are expressly provided for in the state's wrongful death statute. *Cf. Blaty*, 454 F.3d at 603 ("As a federal court applying a state law remedy, this Court's hands are tied to some degree in scrutinizing the types of available damages."). Because the personal injury claim does not survive under the FWDA, the Court must borrow the state's comprehensive wrongful death law as the federal remedy.

Defendants also argue that hedonic damages are not available in this case because they are not available under the FWDA. The Court agrees. Because a decedent's post death lost enjoyment of life is not a compensable injury under the FWDA, these damages are not available under § 1983. *See Brown v. Seebach*, 763 F. Supp. 574, 583 (S.D. Fla. 1991) ("Hedonic damages are not made a part of Fla. Stat. § 768.21."). Sharbaugh has cited nothing to the contrary.

Accordingly:

1.      Defendants' Motions for Judgment on the Pleadings, ECF Nos. 66, 69, & 74 are **GRANTED.**

2.      Plaintiff has seven (7) days from the date of this Order to act on the pending Rule 68 Offer of Judgment and file a notice with the Court of his decision.

3.      If the offer of judgment is rejected, the discovery stay is **LIFTED**, and the discovery related deadlines imposed by the Chief Magistrate Judge's Order, ECF No. 90, are reinstated and modified as follows:

- if the parties are able to completely resolve the issues raised in Plaintiff's Motion to Compel, ECF No. 81, on or before July 28, 2017, Plaintiff shall file a notice with the Court indicating that the matter has been resolved.

- If the parties are unable to completely resolve the dispute, Defendants shall file a response to Plaintiff's motion to compel on or before July 31, 2017.

- The parties are directed to comply with the terms detailed in the Chief

Magistrate Judge's Order in all other respects.  *See* ECF No. 90.

**DONE AND ORDERED** this 14th day of July, 2017.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**